May it please the Court, Elaine Newquist on behalf of Banner Plumbing. The issue in this case involves whether or not Mr. Shaw is entitled to maintenance for a period subsequent to October 2, 2007. It was the conclusion of the arbitrator, the commission, and the circuit court that he was. It is our contention that, as a matter of law, there is no basis for even considering maintenance when an individual is released to his full-duty job. Why is that? You're saying it's de novo review? Correct. And why is that? Our courts have – your decisions have established the proposition, first of all, the statute provides that maintenance is awardable in an instance where an individual is engaged in vocational placement. Well, my question is, are you saying that the facts are undisputed on that issue? I do believe that to be true. Well, if there was no dispute about whether he was released to return to his job, why didn't Banner Plumbing Supply let him come back to work? They chose not to. And the petition – Well, they said he couldn't come back because he was too – he had restrictions. Actually, what they said was that they needed clarification from the doctor with respect to what he could or couldn't do. Well, then ultimately they wrote a letter and said, you know, you can't come back because – We never received the clarification. I believe it was specifically that they had asked Dr. Panschel to clarify what it was that he could or couldn't do, and never received clarification of it. I think the letter said, after confirming with your doctor – But I think – and with all due respect – But the point is that there was a dispute about what his restrictions were. So how can you say the undisputed facts are he was released to return to the essential functions of his job? There really is no dispute with respect to what he was cleared to do. The dispute or the confusion seems to be that this particular employer, in all honesty, did whatever it could to not have to take him back. Okay. Now, let's go then to when the employer, through the insurance carrier, hired a vocation rehabilitation specialist. Right. That person then said, it's not clear what your restrictions are, so don't look for a job until you get an FCE. And what does that FCE do? It, again, clears him back to the essential functions of his job. You understand my point? Why is everybody confused about what his restrictions are, if this is all undisputed facts? There is no question but that an adjuster made some errors with respect to the handling of this case. However, if you go back to the basic medical situation as it existed, both in early October of 2007, and even if we chose to, in September of 2008, when he again undergoes a functional capacity evaluation and is again released, the bottom line conclusion each and every time is the same. The first functional capacity evaluation clears him to return to heavy duty, September 6, 2007. The operating surgeon, Dr. Panchel, clears him to return to work per the FCE on October 1, 2007. Dr. Ghanayem reviews the essential functions of his job and clears him back to that job, September 20, 2007. Dr. Ghanayem was the employer's examining physician? He was the evaluating physician. Right. But we also have the treater clearing him to heavy duty per the FCE as of October 1. Mr. Shaw testified that irrespective of the reason why, he knew both that he had been cleared to heavy duty and that Banner was not going to take him back seven days later. He then did absolutely nothing by his own admission until March of 2008. When he then says he applied, he filled out one application for an employer he knew was not hiring. There is no question but that some confusion occurred because Tammy Lindley-Luntz said, I'm not sure, there's something vague to me, so let's go back and get another FCE. Now that was after he'd already found a job that she told him not to take. Right. He goes and he finds a bus driving job at $10.15 an hour. We've got a guy with not one but two CDLs, a hazmat endorsement. He's a motorcycle and safety instructor. He knows CPR. He doesn't apply for anything that has anything to do with his experience, his education, his capabilities. He takes some job as a bus driver paying $10.15 an hour. It would have made a pretty big wage differential, wouldn't it? Precisely. And that's presumably why the insurance carrier told Luntz to tell him not to take the job. Precisely. But what we have to get back to is, were I arguing that some folk opinion was supposed to be greater than the facts, I wouldn't stand a chance here. The bottom line is that he is cleared to full duty in September of 2007. Okay, that's the September 6th. September 6th of the FCE. McKinley County Physical Therapy. Correct. And didn't the therapist say his safe maximums did not meet his required work demands? The only difference between what he had to do at Banner and what he was capable of doing is that he was limited to lifting 100 pounds. And he testified that at Banner he had to lift 125 pounds, but then admitted that he didn't actually have to lift 125 pounds because there was always a dolly there for him to use. Ghanayim looked at the same essential functions of his job and said, you can go back to doing that. But let's assume for the sake of argument that Banner, for whatever reason, isn't going to take him back. The bottom line is, what entitles him to maintenance by law is a full-time effort at job search. National T tells us he is not entitled to either vocational placement or maintenance where he has sufficient skills to find suitable employment. And where he chooses not to use any of his education or skills to look for a job, where he chooses to not look for work within the FCE that has cleared him to heavy duty, how can you then turn around and say where he chooses not to even look for work? I mean, we've got a guy that takes the first job he can find at $10.15 an hour, presumably to build up that wage differential, and after, by his own admission, looking for absolutely nothing from October 9, 2007, when he knows Banner is not going to take him back. Banner doesn't exist as far as he's concerned. I'm having a real problem with this part of your argument because, I mean, he finds a job. The employer's insurance carrier tells him don't take it. Then Tammy Lindley Lutz tells him don't look for a job until we get an FCE. It takes weeks before the FCE gets set up. I mean, the FCE is into September. Correct. The arbitration hearing is in December. Right. It's not until the end of October before she does an analysis and tells him now go look for work. So, I mean, you're arguing how he didn't perform a diligent job search, and the people that the employer hired to try to help him get a job told him not to look until just a few weeks before the arbitration. It doesn't really explain what he didn't do before she got involved. He found a job. But they didn't want to pay the wage differential. Well, if Tammy Lindley Lutz was not involved in this at all, if the second FCE was not involved in this at all, and if, in fact, counsel had sought to prove up a wage differential based upon those earnings, we would be having a discussion about whether or not that's an appropriate job for him, and the answer would be no. Because by his own admission, he took the first low-paying job he could find, having not applied anywhere else, and not using any of his work capabilities, his education, his experience, his two CDLs, his HAZMAT endorsement, not using any of those things. All very interesting, except under the law, under the review, the claimant's diligence is, in fact, a fact question for the commission, isn't it? But they weren't addressing it. That's not a matter of law. That's a fact question. But the commission decision, neither the arbitrator nor the commission addresses whether or not he was diligent in looking for work. Well, he found a job. We're going round and round. As Justice Stewart says, he found the job. But that wasn't the issue. The issue was whether or not he was entitled to maintenance for this rather substantial 65-week period. And my position is that under Illinois law, he is not entitled to maintenance where he is cleared to full duty. If he chooses not to look, if he chooses to take a lower-paying job, if he chooses to take a year off and then go look for work, none of those things make any difference, because the bottom line is, pursuant to Connell, pursuant to Nationalty, pursuant to Alexander, there is no award. We're not in a maintenance situation. Well, if he's cleared to full duty, then there's no reason for him to have voc rehab. Correct. But that's what happened. And not at his initiative, but the employer, the insurance carrier sent Tammy Lindley-Lutz and said, do what she says. There's absolutely no question but that they made a huge mistake, and I have absolutely no idea. And had they had the advice of counsel, I would certainly have not. I would have said, he was cleared to full duty, and he knows he was cleared to full duty back in October of 2007. Did you mess this up by insisting on a second FCE that, oh, by the way, gets him to the exact same result? We all deal with these situations. You know, had he had a sick child and not been able to look for work for a month, would I in good conscience be able to look at you and say, his failings are somehow somebody's fault? There is no question but that employing Tammy Lindley-Lutz at the point that they did was a huge mistake. I suspect they have some sort of national contract with nurse case manager voc people and adjusters. Is the mistaken advice that she gave him, you're saying that should not enter into the mix at all? No. There were mistakes made. The employee is misled. He does what they tell him to do. Don't take this job. Wait until you hear from us. That's all okay? Why is that all okay? Because that's not really the issue here. It's not whether or not he was entitled to rely on it. It's whether maintenance would ever be awardable in any instance where somebody has already been cleared back to full duty. So that's it. Once he's cleared, that's the end of the case. Whether or not he can perform the essential functions of the job does not matter. It does matter because the determination of the functional capacity evaluation and the doctor was that he could. Well, you said all that matters basically is, is he cleared to return to work? That's the end of the inquiry. Game over. He's cleared to work. Justice, as you well know, if he's cleared with restrictions, we're in a different situation. If he's cleared with hourly or wait or other limitations, we're in an entirely different situation. Here, we're not, we never get to that point. We never get to 8A because he isn't. He's not a vote candidate. Per nationality, he's not. He is not entitled to maintenance. Per Connell, he's not. Because he has been cleared to full duty. Okay. Who cleared him again to full duty in October? Dr. Panschel cleared him to full duty October 1st, 2007, which in fact is what Arbitrator Arbacci relied upon in suspending the temporary total disability. Nobody has any problem with respect to that portion of the decision. The issue is what happens as of October 2nd. Today is the first day of the rest of your life. You are cleared back to full duty. Seven days later, you know, and he admits under oath that he knows, Banner is not taking him back. There's a lot of bad blood there. Well, he says he suspects. He knew. He knew. He testified. He didn't say I knew. He said I suspected. But that was the case. He said both as of October 9th and I believe as of December 1st, 2007, he had no reasonable expectation of returning back to work for Banner. What did he do? Between then and March, nothing. Between March and June, one application with a company that wasn't hiring. He then has the second FCE. He's again in the same boat. What does he do? Does he go look for truck driving jobs? Does he go look for Banner plumbing type jobs? Does he go look for something that will allow him to use that hazmat endorsement, which isn't really easy to get? No. What does he do? He goes and he gets that $10 an hour school bus job. Actually, that was back in March that he had that job. Well, I think, I thought it was in June, but I could stand corrected and I do apologize. I mean, Lutz didn't show up until June, but. When he had come up with this one idea. Yeah. And there's no indication. That's the other odd thing. There's absolutely no indication he went anywhere else or tried anywhere else. The only other place he could identify was someplace that he admitted wasn't hiring. And this is supposed to. So what are you saying? I mean, at this point, let's say it's March, he gets this school bus job. And this is before the FCE, right? Before the second one. After the first. Correct. Okay. My position is that under Illinois law, you don't get to consider whether or not he's making a diligent effort. You don't need to consider whether or not this job is good or that job is better or he needs help. He's not a vote candidate. There's no demand here for vote, in fact. He's not, as a matter of law, entitled to maintenance because what does maintenance exist to do? It exists to compensate people while they're making a full-time effort to look for work because they've been released with permanent restrictions and they cannot return back to their full-duty job. So you're saying he's not entitled to vocational rehabilitation, right? Correct. Then why is the employer telling him he is? They made a mistake. Okay. That's the thing. They made a mistake. The insurance company made a mistake. They got a nurse case manager-slash-vote expert involved. And if he follows their advice, that should be of no consequence. I suppose that theoretically he could have been entitled to rely on her advice to do nothing until he had that second FCE. Right. And point in fact, he was paid $65,000 in benefits during most of this period of time anyway. Don't you want your employees to listen to the advice of your company, of the employer, or no? He also has an attorney. And I assume his attorney is able to- Doesn't the record reflect that his attorney contacted the company or somebody about this bus-driving job? I think the record reflects that and said, should he take this job? He's got an opportunity for a job. And they told him no, ultimately. But we're again getting into a situation where we would be dealing with the need to deal with those issues. And we don't have the need to deal with those issues because he's cleared to full duty. Well, he testified he-there was testimony by the claimant that he could not do all of his essential functions of his job. I mean, you say he could use a dolly. But he says, yeah, I've got to somehow move a 500-pound water heater onto the dolly. I can't do that. Wasn't that the testimony? That was the one item- There was a dispute about whether he could do his job duties. And in fact, his employer ultimately said you can't come back because you have restrictions. That's what the letter says. After confirming with your doctor. And it's difficult to know exactly, other than that it's pretty obvious that the employer didn't want to take him back. What they were specifically responding to. And using pretty much any excuse not to take him back. But let's get back to the fact that he's released to heavy duty. Where do you go from there? We aren't dealing with somebody that has-what do all of our-these situations exist for? The maintenance exists to help somebody that has got permanent restrictions that prevent them from going back to the kind of work they did before. Vote placement exists to help people who don't know how to look for a job because they've done the same type of thing that they've always done. Wage differentials exist to compensate people because they have a permanent diminished earning capacity because of permanent restrictions. He's cleared to heavy duty. He doesn't go back to heavy duty. He doesn't even look for heavy duty. He takes a school bus driver job. Thank you. Counsel, please. Good morning, Your Honors. John Rizzo on behalf of Mr. Shaw. I heard at least three times the statement. You don't have to worry about that. We don't have to get there because he was released to full duty. It's a lie. It's a blatant lie. And I guess if you say it more and more and more, it becomes true. Let's take a look at October 1, 2007. Dr. Panchel's note. Read it. You won't see the words full duty in it. Why? Because he didn't release him to full duty, as counsel has said repeatedly. It says he can return to work with restrictions outlined per the work hardening program. That's not full duty. It says with restrictions. So how does counsel say that he's released to full duty? How can she say that? Not only that, but we know he has restrictions and a respondent knew it. Because when he shows up to work with the restrictions, they say, hold on, can't put you to work until I talk to the vice president, Mr. Hara. He'll be in on Monday. What does my guy do? Say, great, I'll be here Monday. He shows up on Monday and Mr. Hara says, I'm not sure what your restrictions are here. They're not clear to me. Let me write to Dr. Pancho, as you've indicated, Justice. He said that exactly. Look at the October 8, 2007. It doesn't say that you're released to full duty. Why is he even making an inquiry if there's no restrictions evident at that time? If he was released to full duty, as counsel has said here repeatedly, falsely, then why would Mr. Hara be inquiring as to what the restrictions are? Why does he need a clarification? Now, here's the important part. In that letter, Mr. Hara writes to Dr. Pancho, and he does a really good job of helping me make my case. What does he say right there? As a delivery driver, Mr. Shah would be performing the following essential job functions. Those are his words, not mine, not Mr. Shah's. Included in that, if you read through that, it says, in addition to a number of other things, he has to be able to frequently bend, stoop, crawl. They're all there. And I know that's true because it's corroborated by Mr. Kingos, who's the supervisor who fills out a job demand physical capacities form that they're handing to the work hardening people. And if you look at that, what does Mr. Kingos sign off on? What does it say? It says that he has to frequently bend, squat, clunk. Okay, so now we know, from the vice president and the supervisor, what the essential functions of the job are. No dispute, because they established it. Look at the FCE. You can look at both of them, but if you want to look at the second one that they are relying upon, it says he can't do that. It says he can't meet that requirement. So why does the arbitrator say he has not met the essential functions of the job? Because the evidence says so. Why does the commission agree with that fact-finding issue? Because the evidence says so. Why did Judge Hall at the Circuit Court of Lake County say, in his order, that petitioner was not released the essential job function? Because the evidence says so. Counsel, in addition to that, what do you make of opposing counsel's argument that we should be reviewing this under the de novo standard, which essentially means the evidence is undisputed? That's red herring, Your Honor. That's red herring. If you review this de novo, and her argument that it is a matter of law, you have to first find that he was released to the essential functions of his job. You have to first say that he was released to full duty, and none of that is true, because the fact-finder has ample, significant evidence to the contrary. The only evidence to the contrary is what she said. There's nothing in here that says that. Ask her to show you where it says full duty in here. She can't. So in order to get to this de novo review, or as a matter of law review, you have to find a change in the facts, which you can't do. Even if you wanted to examine whether or not it was against the manifest weight of the evidence, there is no other evidence. They established it. But you would agree with her argument that were the facts as she says they are, that it would be a matter of law? If he was released to the essential functions of his job, yes. Then I believe that we do have a different inquiry. But we don't have that here. And as far as his entitlement to maintenance, he's entitled to maintenance because he hasn't been released. And he hasn't. They know he has restrictions. Mr. Harr wants to find out about him. Then when Ms. Lutz comes on the picture, she says, oh, we're not sure. We need some clarification. Then they let him run around the block. He, right away, as soon as he's told, goes to his doctor and gets a prescription in the first week of July. But it's not until the second week of September that they actually approve it. Who's doing that? Who's making those mistakes? Not my client. Yet they want to say that he's not entitled to a benefit. Your Honors, if she wants to stay here and tell you that as a matter of law he's not entitled to maintenance benefits, in order to get to that question, you first have to establish that the commission's fact finding that he was not released to the essential functions of his job must be reversed. And I will pose to you that you will not find evidence to establish that. It's not in the record. In fact, we have a petitioner who tried, as Your Honor has pointed out, Ms. Lutz, in her initial report, if you go and look at her initial report, when she evaluates my client, these are her words, not mine, on a scale of 1 to 10, with 10 being the highest, Mr. Shaw rated motivation to return to gainful employment 8 out of 10. He has a current resume and has been seeking employment and is supported by the evidence of the job offer at PACE. Their person says he was diligent in looking for work. And he's not, he doesn't stop being diligent until they tell him to stop. But again, I believe my client was entitled to maintenance benefits. He was entitled to vocational assistance because the facts are undisputed. He could not perform the essential job function. He couldn't do it. The FCE is valid. There was no inconsistency in the FCE. And the essential job functions were defined by them, the supervisor and the vice president. And if he couldn't do the essential job functions and they couldn't take him back, that is the definition of maintenance. That's the definition. And then they hogged around for six more months trying to get clarification, hiring Ms. Lutz and the rest of it, but my client sat in limbo. And now they let him sit in limbo further. Because they want to mislead the issue and say this is a matter of law. When they just skipped, you've got to walk before you can run. And you've got to have a finding that he was released to full duty before you can get to the question of whether he's entitled to maintenance. And if you don't find he's released to full duty, then it stops. This isn't a de novo review. This is a manifest wait question. And the manifest wait is right here. It's in the record. They don't present anything else. Ask her to show you where the full duty is. Counsel, your opposing counsel has clearly called you out, and he has asked to show where in the record was the claimant returned to full duty without restrictions. Show us where that is, please. The functional capacity evaluation, and I would direct your attention to C233 of the record, outlines what the essential functions are of petitioner's full duty job and then proceeds to clear them to each and every one of those. Thank you. Thank you, counsel. The court will take the matter under review for disposition.